UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

       Plaintiff,

       v.

TIMOTHY OLANDER,

       Defendant.

Crim. No. 06-75-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

    Defendant Timothy Olander (defendant) moves to suppress evidence and statements collected during and subsequent to a search executed pursuant to a search warrant. That warrant targeted a room belonging to defendant's brother and the common areas of a residence in which defendant and his brothers and parents lived.

1 -- OPINION AND ORDER

Testimony and oral arguments regarding these motions were heard in court on September 8, 2006. For the following reasons, defendant's Motions to Suppress and related motions are denied.

QUESTIONS PRESENTED

Defendant filed a "First Motion to Suppress and For Franks Hearing" [21] and a "Supplemental Motion to Suppress Grounds" [33]. Defendant argues that the evidence and statements at issue should be suppressed because:

(1)   the law enforcement officers' entry into defendant's room was illegal;

(2)   defendant's detention by agents during the execution of the search warrant was illegal;

(3)   defendant's consent to allow agents to look at his computer configuration was coerced;

(4)   defendant's computer was not an "instrumentality" of David Olander's crimes and therefore not within the scope of the warrant; and

(5)   defendant's confession that his computer contained child pornography was coerced.

As part of these motions, defendant also sought a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1977). The ruling in *Franks* has been construed as allowing a defendant to challenge a facially valid affidavit by making a substantial preliminary showing that "(1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *United States v. Lefkowitz*, 618 F.2d 1313, 1317 (9th Cir. 1980); *see also United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985), *amended*, 769 F.2d 1410 (9th Cir. 1985) (a defendant can challenge the affidavit in support of a search warrant that is valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead).

Defendant also has asserted a "Motion For an In Camera Inspection of Mental Health Records, Sealing of Records and Determination Regarding Discovery." That motion is also addressed below.

2 -- OPINION AND ORDER

ANALYSIS

    1.    *Franks* Hearing Request

This court first addresses defendant's request for a *Franks* hearing. To merit an evidentiary hearing under *Franks*, defendant must make a substantial preliminary showing that the affiant deliberately or recklessly omitted facts and that these omissions of fact tended to mislead the magistrate. *Stanert*, 762 F.2d at 780-81.

In determining whether a *Franks* hearing is appropriate, the court assumes that all of the facts allegedly omitted by the affiant are true, and then considers whether the affidavit supplemented by the omitted facts would still be sufficient to support a finding of probable cause. *United States v. Whitworth*, 856 F.2d 1268, 1280-81 (9th Cir. 1988). Also, the court performs a two-part inquiry: first, the court determines whether the government intentionally falsified or recklessly failed to verify information in the affidavit, or whether there are intentionally or recklessly omitted facts rendering otherwise true statements as misleading. *See United States v. Jordan*, 291 F.3d 1091, 1100 (9th Cir. 2002).

Second, if the defendant makes such a showing, then the court must determine whether the falsities or omissions are material, *i.e.*, whether the affidavit without the flaws would support a finding of probable cause. *United States v. Mehling*, 47 F.3d 1546, 1553 (9th Cir. 1995). After this kind of evidence and briefing is presented, the duty before the court would then be to determine whether the fruits of the search at issue must be suppressed because the defendant has proven by a preponderance of the evidence that:

    a) the warrant affiant intentionally or recklessly made false statements *or* deliberately or recklessly omitted facts that tend to mislead, *and*

3 -- OPINION AND ORDER

b)  the false statements or omissions were material to a finding of probable cause. *United States v. DeLeon*, 979 F.2d 761, 763 (9th Cir. 1992); *Franks*, 438 U.S. at 156.

In determining whether there was probable cause sufficient to support the warrant, statements recklessly omitted are added to the affidavit. *DeLeon*, 979 F.2d at 764. The effects of the corrections to the affidavit are considered cumulatively. *Stanert*, 762 F.2d at 782.

This court concludes that defendant has failed to make a substantial preliminary showing that the affiant deliberately or recklessly omitted facts and that these omissions of fact tended to mislead the magistrate. *Stanert*, 762 F.2d at 780-81. This conclusion applies to the search warrant for the residence of defendant and his brother, and to the subsequent warrant permitting the search of defendant's computer. The conclusion is bolstered by the results of the hearing conducted regarding defendant's motions to suppress. Defendant was provided an opportunity to elicit testimony and evidence from the warrants' affiant and other investigating officers during this hearing. No evidence was presented that suggested that any of the officers or agents intentionally falsified or recklessly failed to verify information in the affidavit, or that there are intentionally or recklessly omitted facts rendering otherwise true statements as misleading. In absence of a substantial preliminary showing, defendant's request for a *Franks* hearing must be denied. *See United States v. Jordan*, 291 F.3d 1091, 1100 (9th Cir. 2002).

Defendant offers nothing to show that agents "intentionally or recklessly" omitted any facts to make the supporting affidavits misleading. The Magistrate Judge's determinations regarding each of these warrants were reasonable and proper and each warrant was supported by more than adequate probable cause to justify the searches.

///

2.    Suppression Motions

Defendant seeks suppression of the evidence obtained from his room by United States Immigration and Customs Enforcement (ICE) agents during the execution of a search warrant targeting his brother, David Olander. The following facts are derived from the parties' briefs and the testimony elicited at oral argument.

On November 12, 2004, the ICE Cyber Crimes Center (C3) Child Exploitation Section (CES) received information from the National Center for Missing and Exploited Children that certain websites were selling subscriptions that provided child pornography. Special Agent (SA) James Mooney began an investigation into these websites based on leads referred from ICE C3. He discovered that David Olander, defendant's brother, was one such subscriber. Additionally, SA Mooney discovered that David Olander had also paid for access to another website containing child pornography on three occasions between March 18, 2003 and March 20, 2003. One of these websites that contained child pornography was known as "Pedoland."

The address to which pornographic subscriptions were sent was 1537 Southeast Lambert Street, Portland, which is the residence of David Olander and his brothers, defendant Timothy Olander and Ricky Olander. Their parents and a tenant also live there.

On November 19, 2004, Special Agents Mooney and Doug Emery traveled to the Lambert Street residence and encountered Ricky Olander and Noel Olander. Agents noted that each brother and the tenant had separate, locked rooms and that both David and Timothy each had their own computers and shared a broadband Internet account. Defendant's father also confirmed that the credit card used to pay for access to the websites in question belonged to David Olander.

After this visit SA Mooney continued his investigation and determined that the same credit card was used to pay for a Comcast Internet Account registered to both David and Timothy Olander. Special Agent Mooney provided a preservation and summons request to Microsoft Network on July 28, 2005, to confirm that the email address was registered to David Olander, and, on July 29, 2005, that the telephone number of the customer who registered for the account was David Olander.

On August 12, 2005, SA Mooney determined that the internet connection through which David Olander obtained his account for access to pornography was through a single Comcast cable modem account in the name of Timothy and David Olander at the Lambert Street residence. He confirmed that Ricky Olander had a felony criminal record for rape in the first degree and contributing to the sexual delinquency of a minor and that defendant had a conviction for Sexual Abuse in the First Degree. David Olander had no criminal history.

After this investigation, SA Mooney submitted an affidavit seeking a warrant to search the Olander residence. A Magistrate Judge issued a search warrant on January 5, 2006, allowing agents to search the room of David Olander and the common areas of the Lambert Street address. No authority was given to enter into or to search the room of Timothy Olander or to seize anything inside his room.

On January 12, 2006, ICE Agents executed the search warrant. They knocked on the front door of the Olander residence, announced their presence, and ordered the occupants to open the door. Defendant opened the door and let the agents into the house. The government alleges that agents cleared the house for their safety by ensuring that all of the residents were accounted for and detained. Special Agent Mooney pushed defendant into his room and onto the edge of his bed while other agents secured the premises.

The government contends that at that time, defendant was informed that he was not under arrest, was free to leave at any time, and that he was not required to answer any questions. The government says that SA Mooney did not threaten, coerce or intimidate the defendant in any way to cause him to make statements or to induce his consent.

Upon entering defendant's room, SA Mooney observed an Ethernet cable running from a computer through the ceiling to David Olander's room. Simultaneously, other agents went upstairs, gained access to David Olander's room, and began to search in accordance with the warrant.

Defendant's father told SA Mooney that David Olander had already left for work and gave him David Olander's cellular telephone number. Special Agent Mooney called David Olander and explained the nature of the search warrant. David Olander then called his parents and SA Mooney spoke with him again. David Olander told SA Mooney that he and defendant owned the Comcast Internet Account jointly.

Senior Special Agent Josh Findley and SA Doug Emery interviewed defendant about David Olander's activities. This interview took place in defendant's room. Defendant stated that he understood and he allowed them to stay in his room and talk to him. The subsequent interview was conducted in his room because defendant refused to leave his room. During the interview, defendant made himself coffee and allowed agents to sit in chairs in the room. Agents asked defendant who in the house was capable of downloading child pornography from the Internet and he responded: "The only one besides me is David."

Defendant told agents that he had assisted in arranging the Internet connection for David Olander's computers. The connection was provided through a modem and wireless network in his room.

7 -- OPINION AND ORDER

Agents then requested consent from defendant to search the hardware for the wireless network and the contents of the computer in his room. Defendant agreed to allow agents to look at the physical network configuration in his room, but refused to allow them to search his computer, instructing them instead to "get a warrant."

After receiving this partial consent, ICE Computer Forensics Agent (CFA) Glen Watson conducted an examination and determined that the modem, wireless router, and defendant's computer were likely part of the computer system that David Olander used to download child pornography and access other illegal websites. He concluded that defendant's computer could contain information regarding those crimes. He also construed defendant's set-up as a possible instrumentality of the crime for which David Olander was being investigated because the router and modem provided connectivity to the Internet.

After this examination, CFA Watson telephoned Assistant United States Attorney Greg Nyhus. The law enforcement officials agreed that defendant's items were subject to seizure because they could have been part of the computer system David Olander used to perpetrate crimes. The agents explained to defendant that his computer was going to be seized pursuant to the warrant being executed and that a subsequent warrant would be sought to search his computer for information regarding David Olander's crimes.

Defendant threw his arms up in a gesture, commented to the effect that "That's just great," and then advised agents that they would find child pornography on his computer as well as in other media formats in his room. He turned over two pictures of child pornography and opened a safe in his room and provided the agents with two black cases containing multiple computer disks. The agents then

requested consent from defendant to search his room and presented him with a written "consent to search" form. Defendant read and signed the form.

Senior SA Findley, CFA Watson, SA Emery, and SA James Mooney conducted a search of the room. They seized one computer, thirty-three CD-ROMs, two printed images, two computer monitors, and three videotapes. They also seized a digital camera, a bag containing children's underwear, a manila envelope containing children's underwear, and other miscellaneous documents.

Subsequently, on January 23, 2006, a Magistrate Judge issued a search warrant for defendant's computer and the other media items seized from his room. Senior SA Watson executed the search warrant on January 25, 2006, and discovered over 1500 pictures and over 300 videos depicting child pornography.

The government opposes defendant's motions to suppress on grounds that defendant voluntarily consented to allow ICE agents to enter his room and, alternatively, the agents had authority to enter his room as part of a permissible protective sweep of the home. The government contends that the ICE agents' detention of defendant was permissible during the execution of a search warrant; and that defendant's consent to allow ICE agents to look at his network configuration was given freely without any police coercion.

The government also asserts that defendant's computer was subject to seizure within the parameters of the search warrant pertaining to brother David Olander because the computer could have contained evidence of David Olander's crimes. Moreover, ICE agents had authority to seize the defendant's computer without a warrant because defendant confessed without coercion that his computer contained child pornography, and the ease with which defendant could have destroyed evidence while agents sought another warrant created compelling exigent circumstances.

After reviewing the evidence presented and the testimony and argument elicited at the hearing, this court concludes that defendant was properly detained, his consents were voluntary and valid, and the seizure of his computer was legal. This court now addresses each of defendant's salient arguments in turn.

Defendant's detention in his room was proper. After answering the door when agents knocked and announced themselves, defendant was pushed back and away from the entryway and into his room. This action occurred spontaneously as a precautionary matter while the execution of the warrant was being initiated. The ICE agents, when executing the search warrant, were unsure of the number of people inside the residence, knew that defendant was a prior felon, and that at least one individual was accessing child pornography through an account registered to two of the occupants of the property. These agents were legitimately concerned about who was in the home and whether it was secure prior to commencing the search. The initial detention of defendant in his room, which was located close to the entryway, was not improper.

Moreover, there is no factual dispute that defendant remained in his room with the agents voluntarily after his placement there during the initial protective sweep of the premises. His interactions and conduct were interpreted properly as consent for the agents to remain in his room during the execution of the search warrant. Defendant refused to leave his room, but told two agents that he was willing to be interviewed in his room during the conduct of the search. Defendant was advised that he was free to leave, not under arrest and was not otherwise detained.

The Ninth Circuit considers five factors when determining whether a person has freely consented to a search:

(1) whether defendant was in custody;

(2) whether the arresting officers had their guns drawn;

(3) whether Miranda warnings were given;

(4) whether the defendant was told he had the right not to consent; and

(5) whether the defendant was told that a search warrant could be obtained.

*United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000).

In that decision, the Ninth Circuit also noted that "it is not necessary for all five factors to be satisfied in order to sustain a consensual search," but rather, "a district court [must] consider the totality of the circumstances when evaluating consent." *Id.* at 1113.

The agents did not have their handguns drawn, defendant was not in custody and was not being interrogated, and although defendant was not told that he had the right to refuse to consent, he demonstrated his awareness of his rights through his subsequent refusal to grant consent to the agents to search his computer. Defendant acquiesced to the agents' presence in his room, and an evaluation of the totality of the circumstances confirms that such acquiescence, in this case, amounts to voluntary consent to the agents' presence.

Similarly, defendant's continued detention during the search was proper. A warrant to search for contraband founded on probable cause "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 704 (1991). "Although special circumstances, or possibly a prolonged detention, might lead to a different conclusion in an unusual case . . . routine detention of residents of a house while it [is] being searched for contraband pursuant to a valid warrant is not such a case." *Id.* at 705.

The Ninth Circuit recognizes that "detentions of occupants during the period of a search will under most circumstances prove to have been reasonable, a detention may be unreasonable in a

11 -- OPINION AND ORDER

particular instance either because the detention itself is improper or because it is carried out in an unreasonable manner." *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994). Defendant's detention was in no way "unnecessarily painful, degrading, or prolonged" and did not involve "an undue invasion of privacy" and so was not improper. *Id*. at 876. To the contrary, the ICE agents detained defendant in his room out of consideration for his comfort and allowed him to stay in his room during the conduct of the search, due in great part to defendant's expressed desire to remain in his room.

Defendant's consent to allow CFA Watson to examine the exterior of his computer and the configuration of the wireless router was also voluntary. Defendant's arguments to the contrary challenge the necessity of the agents' request for such an inspection. Specifically, defendant refers to passages in the warrant that direct agents to conduct initial reviews of computer equipment and storage devices "to determine whether these items can be accessed and preserved on-site in a reasonable amount of time and without jeopardizing the ability to preserve the data in order to analyze and search it off-site." Warrant at ¶ 12. Defendant complains that his router was not examined for any logs, settings or "configuration" beyond a visual examination of cabling. However, the manner in which the agents conducted their search fails to detract from the determination that defendant's consent to examine the router and network configuration was voluntary. Under the totality of the circumstances (and the Ninth Circuit's factors pertaining to this, already reviewed), that consent was voluntary because it was given when:

(1) defendant was not in custody;

(2) officers did not have guns drawn;

12 -- OPINION AND ORDER

(3) defendant knew he had the right not to consent (as demonstrated when he denied consent to search his computer); and

(4) defendant was not told that a search warrant could be obtained.

*Cormier*, 220 F.3d at 1112.

      This court also concludes that the agents' seizure of defendant's computer withstands scrutiny. After ICE agents obtained defendant's consent to look at the network configuration, CFA Watson examined the network configuration and determined that defendant's computer could have been an instrumentality that was used to maintain the wireless router that the subject of the search warrant used to access the Internet and download child pornography. This expert also believed that defendant's computer may contain evidence in the form of logs and other data regarding the router and with David Olander's internet usage. Affidavit of SA James L. Mooney at 6-7.

      Defendant renews multiple challenges regarding CFA Watson's conclusions and the methods by which he derived them, but those challenges fail to diminish the fact that the examination of defendant's computer external configuration and the expert's subsequent conclusions established sufficient probable cause for the computer's seizure. Regardless of the possible alternative means for examining aspects of the network configuration, it was not unreasonable to conclude that defendant's computer contained evidence and that its seizure was proper. Probable cause exists where, based on a "common-sense," "totality-of-the-circumstances" analysis, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-9 (1983).

      This court concludes that the computer's seizure was proper under the warrant's scope because after the expert's examination it was reasonably construed as possibly part of the "entire computer

system" being used by David Olander and could have contained evidence of his crimes. This court acknowledges that search warrants may describe computer equipment in "generic terms and subjected . . . to blanket seizure" where "a more precise description is not possible." *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997). The Ninth Circuit has also recognized that it may be "necessary to seize [an] entire computer system in order to examine the electronic data for contraband" and that in such cases agents are "justified [in] taking the entire system off site because of the time, expertise, and controlled environment required for a proper analysis." *United States v. Hay*, 231 F.3d 630, 637 (9th Cir. 2000).

The warrant at issue sought the authority to search for and seize any computer hardware, software, or storage devices that could contain evidence of David Olander's means to access, store, and view child pornography. Defendant voluntarily subjected external portions of his computer to expert examination, after his computer was reasonably viewed as possibly part of the "entire computer system" used by David Olander and could have contained evidence of David Olander's crimes.

Similarly, the computer was seized properly under the warrant as a possible instrumentality of the crimes being investigated. The warrant allowed agents to search for and to seize "instrumentalities" that may contain evidence of the crime of possession of child pornography. There was a fair probability that defendant's computer contained evidence of David Olander's crimes and may have facilitated the commission of those crime. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978); *see also United States v. Adjani*, 452

14 -- OPINION AND ORDER

F.3d 1140, 1146 (9th Cir. 2006) (although individuals have a high expectation of privacy in the files stored on personal computers, the Ninth Circuit has never held that agents may establish probable cause to search only those items owned or possessed by the criminal suspect).

Next, the court evaluates defendant's complaint that his confession that his computer contained child pornography should be deemed involuntary or coerced. As noted above, defendant consented to allow agents to examine defendant's computer network configuration. However, defendant refused their request for consent to search his computer. Instead, he instructed the agents to "get a warrant."

After agents had examined his network configuration and advised defendant that they were seizing his computer under the search warrant being executed against David Olander, defendant voluntarily informed them that his computer contained child pornography.

The Ninth Circuit has held that the voluntariness of a statement must be considered in light of the totality of the circumstances and that courts, in making such a determination, should consider whether the government obtained the statement by means of physical or psychological coercion or by improper inducement so that the suspect's will was overborne. *Beaty v. Stewart*, 303 F.3d 975, 992 (9th Cir. 2002) (quotation and citation omitted).

After evaluating the totality of the circumstances surrounding defendant's confession, this court concludes that defendant's acknowledgment that pornography was contained in his computer cannot be said to be coerced or unfairly obtained. There is no evidence suggesting that defendant was subjected to any significant physical or psychological coercion. Although he was visibly frustrated about the agents' decision to seize his computer, his decision to offer confessions about the content of

his computer files, and to turn over other forms of child pornography, was made voluntarily and without coercion.

3.      Remaining Motions

In accordance with the rulings above, defendant's "Motion For an In Camera Inspection of Mental Health Records, Sealing of Records and Determination Regarding Discovery" [35] is denied as moot. The records at issue were not necessary for a full, fair adjudication of the suppression motions before the court, and were not considered.

CONCLUSION

Under the facts presented and in consideration of the totality of all relevant circumstances, this court concludes that defendant's "First Motion to Suppress and For Franks Hearing" [21] and "Supplemental Motion to Suppress Grounds" [33] must be denied. Defendant's "Motion For an In Camera Inspection of Mental Health Records, Sealing of Records and Determination Regarding Discovery" [35] is denied as moot.

IT IS SO ORDERED.

DATED this __18___ day of September, 2006.


　　　　　　　　　　　　　　___/s/Ancer L.Haggerty _____
　　　　　　　　　　　　　　　　　　Ancer L. Haggerty
　　　　　　　　　　　　　　　　United States District Judge